IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:08CV84-Mu

| | |
|---|---|
| KORY S. MEDINA,       ) | |
|       Plaintiff,   ) | |
| ) | |
| vs.     ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE,   ) | |
| Commissioner of Social   ) | |
| Security Administration,   ) | |
|       Defendant.   ) | |
| ) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum in Support ..." (document #11), both filed July 9, 2008; and the Defendant's "Motion For Summary Judgment" (document #12) and "Memorandum in Support of the Commissioner's Decision" (document #13), both filed September 8, 2008. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On May 14, 2004, the Plaintiff filed an application for Social Security Disability benefits ("DIB") and Supplemental Security Income ("SSI"), alleging he was unable to work as of October 6, 2003, as the result of problems in his left arm caused by gunshot wounds suffered on that date (Tr.

54, 62). The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on January 18, 2007. On February 9, 2007, the ALJ issued a decision denying the Plaintiff's claim. The Plaintiff filed a timely Request for Review of Hearing Decision. On January 11, 2008, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on March 3, 2008, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. **FACTUAL BACKGROUND**

The Plaintiff testified that he was born on October 10, 1967 and was 39 years-old at the time of the hearing; that he was married and had three children, ages 7, 10 and 17; that at the time of the hearing, he weighed 320 pounds, although he normally weighed around 290 pounds; that he completed high school and completed a training course after high school to become a tow truck operator; that he last worked as an order puller which required lifting 25 to 75 pounds; that he had past relevant work as a tow truck operator, fork lift operator, shipping and receiving clerk, and mover; that he was right handed; that he stopped work after being injured by gunshots on October 6, 2003; and that he and his family moved to North Carolina from California on February 17, 2005.

Concerning his medical condition, the Plaintiff testified that that his primary limitation was numbness in his left arm; that the numbness in his upper left arm had improved, but not in the lower arm and hand; that he took Tylenol for pain; and that he also suffered low back pain which limited him to sitting or standing for 15 minutes at a time.

Regarding activities of daily living, the Plaintiff testified that he was afraid to cook for fear that his lack of sensation in his left arm would cause him to be burned; that he did not assist with any

other household chores; that he spent his time lying on the couch, watching television, and visiting with friends; and that his family had driven to Florida on vacation.

A Vocational Expert ("VE") classified the Plaintiff's prior work experience as medium (forklift operator, order puller, and shipping and receiving clerk) and heavy (mover), with transferable skills from the shipping and receiving clerk position to light jobs as a shipping checker (2,530 positions available in North Carolina) and expediter service order (8,530 positions available in North Carolina). The ALJ then gave the VE the following hypothetical:

> Now, assume I find for a relevant 12-month period that the claimant's exertional impairments would permit at least sedentary and light work on a sustained basis, but with non-exertional restrictions principally relating to his non-dominant left upper extremity, so that I would <u>rule out any jobs requiring bilateral regular use of both left upper extremities, limiting one to jobs where you could do the work with the right dominant hand and arm with no more than the helper use he has demonstrated here which is essentially non except for balance or to push with his left upper arm, no use of his hand or from the elbow down, which would rule out jobs where both hands, both arms are required. It would rule out jobs where hand controls of a bilateral nature was required, limiting one to one handed operating of hand controls</u>. Assume also a degree of chronic pain severe enough even with appropriate medication to rule out sustained skilled concentration forcing one to consider unskilled or semi-skilled work in an eight hour day. If I were to place those non-exertional restrictions on sedentary and light work for a male of 35 to 39 with a high school education level and the prior work to the extent it might be relevant, are there jobs available that such a person could do with those limitations?

(Tr. 297-98) (emphasis added).

The VE testified that with these limitations, the Plaintiff could work as a gate guard (light work), a reader (sedentary work) and a surveillance system monitor (sedentary work), and that 10, 850 of the light gate guard jobs and 15, 360 of the sedentary jobs were available in North Carolina. On cross-examination by the Plaintiff's counsel, the VE testified that if the Plaintiff required a rest break every 15 to 20 minutes and if the breaks were 30 minutes in duration, then the Plaintiff would be unable to perform the identified jobs.

3

On July 18, 2005, Stuart A. Brodsky, D.O., an Agency medical expert, completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited in his legs and right arm; that Plaintiff was limited to no more than occasional operation of controls with his left arm and hand; and that Plaintiff had a marked limitation in reaching, handling, fingering or feeling with his left arm and hand. After reviewing the Plaintiff's medical chart, Dr. Brodsky stated that remaining bullet fragments were not expected to cause "appreciable functional deficit" and that by October 2004, the Plaintiff should be capable of performing a significant portion of light jobs.

On October 26, 2004, David A. Haaland, M.D. reviewed and affirmed Dr. Brodsky's findings. Dr. Haaland went on to note that medical examinations on September 9 and October 6, 2004 were within normal limits except that the Plaintiff exhibited left hand weakness.

In a "Disability Report–Appeal" completed by the Plaintiff on December 2, 2004, he complained that he had suffered a "slipped disk" in November 2004 and was being treated by Dr. Gerald Lim and Dr. Hesun Helen Baek for that condition. As discussed below, the treatment records of those physicians make no mention of the Plaintiff even complaining of back pain, much less being diagnosed with a disc disorder.

The medical records submitted to the ALJ (during or after the hearing) establish that the Plaintiff suffered multiple gunshot wounds on October 6, 2003, and was hospitalized for a period of about ten days during which period he underwent surgery. Over the next four months, the Plaintiff was seen at Inland Healthcare Group on six occasions for complaints related to brachial plexus injury with pain and unusual sensations in the left arm. From the end of March 2004 through

June 2004, twelve occupational therapy sessions were authorized. The Plaintiff was treated by Sun C. Song, M.D. from March through October 2004. Dr. Song repeatedly found evidence of weakness in the Plaintiff's left hand but returned the Plaintiff to work status in October 2004.

The Plaintiff was seen by Dr. Gerald Lim in December 2004 for evaluation of weakness in his left upper extremity. The Plaintiff reported taking Vicodin only as needed, about one pill every other day. Plaintiff was reportedly doing well except for occasional sharp pain and he described his pain as "tolerable." The Plaintiff's left hand appeared "mildly atrophic" compared to the right, but Dr. Lim noted that he was right-handed. Dr. Lim described sensation in Plaintiff's lower extremities and right upper extremity as normal but mildly decreased in his left hand digits. Dr. Lim opined that a possible diagnosis for Plaintiff was branchial plexopathy.

An EMG was performed on December 28, 2004. In January 2005, Dr. Hesun Helen Baek indicated that the EMG results indicated evidence of branchial plexopathy affecting the nerves branching out into the Plaintiff's left arm and hand. In February 2005, she opined that this caused left arm and hand numbness and weakness and that as a result he had permanent disability "of this extremity."

After moving to North Carolina in February 2005, the Plaintiff's medical treatment was provided by Dr. Hiten K. Patel. Dr. Patel initially saw Plaintiff in October 2005, at which time he complained of numbness and intermittent shooting pain in his left forearm and hand for which he took Vicodin on rare occasions and non-radiating back pain. On examining Plaintiff's back, Dr. Patel noted mild midline tenderness in the lumbosacral area; straight leg raising ("SLR") testing was negative; strength and touch sensation were intact; and, deep tendon reflexes were 1+ and symmetrical.

5

In February 2006, the Plaintiff returned to Dr. Patel for follow-up and to have a form for his disability claim completed. Plaintiff reported increased strength in his left arm but no improvement in strength or use of the left hand. The Plaintiff reported that his low back pain was worse than his arm pain and told Dr. Patel that he had back pain if he sat or stood for even short periods of time and that he avoided bending altogether. Despite the Plaintiff's complaints, Dr. Patel observed that Plaintiff was in no apparent distress ("NAD") and an examination revealed only "moderately severe" lumbar paraspinal muscle tenderness, "mild to moderate" midline tenderness in the lumbar region, and straight leg raises, deep tendon reflexes, strength, and touch sensation were normal. During this February 2006 visit, Dr. Patel only partially completed the disability form, and he asked the Plaintiff to return in March for further evaluation. Dr. Patel's notes show, however, that the only medical condition addressed during the Plaintiff's March 2006 office visit was nasal congestion due to seasonal allergies.

The Plaintiff's last visit to Dr. Patel prior to his January 2007 hearing was in April 2006. At that time, he saw Dr. Patel for a ganglion cyst in his right wrist area and seasonal allergies. Dr. Patel drained the cyst and changed the medication he had prescribed for Plaintiff's allergy.

Shortly before his hearing, on January 2, 2007, the Plaintiff saw Dr. Stephen F. Kramer with weakness and numbness in his left arm and numbness and "some" ongoing back pain. There was muscle wasting distally in his left arm with markedly reduced muscle bulk in the muscles of the left forearm and left hand; deep tendon reflexes were reduced in the left arm; and, there were substantial sensory changes below the elbow. Hand movement was very poor on the left and Dr. Kramer reported that Plaintiff could not flex, grip or extend the fingers of his left hand to any degree.

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not

"disabled" for Social Security purposes.

Following issuance of the ALJ's unfavorable decision in February 2007, the Plaintiff, through counsel, submitted to the Appeals Council a "Multiple Impairment Questionnaire" which Dr. Patel had apparently completed on March 21, 2006. In this form, Dr. Patel opined that Plaintiff could lift and carry twenty pounds frequently but could never lift or carry any greater weight; that he could not do repetitive handling, fingering or lifting with his left arm and hand; and, that he had marked limitation in using his left hand for fine manipulation, for reaching or for grasping, twisting or turning objects but had no limitation in doing any of these activities with his right hand. He opined that in an eight-hour day Plaintiff could only sit for one or two hours and could only stand for one or two hours but that he was unsure if it was necessary or medically recommended that he not stand/walk continuously in a work setting. Dr. Patel also opined that Plaintiff needed to avoid heights and that he could do no pulling, no kneeling, no bending and no stooping (Tr. 266).

The Appeals Council concluded that the information Dr. Patel provided on the form was not "new and material evidence" requiring remand, but was instead merely a restatement of his earlier findings. See King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) (in order to warrant remand or reversal, new evidence must be material and reasonably likely to have resulted in a different decision).

It is from these determinations that the Plaintiff appeals.

### III.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

7

the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. <u>DISCUSSION OF CLAIM</u>

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[1] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered left brachial plexopathy, residual effects of gunshot wounds, and obesity, which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff had the residual functional capacity for work at the light[2] or sedentary exertional levels provided that it did not require use of the left upper extremity for more than a helper for balancing or pushing with no use of the lower left arm or elbow, and did not require sustained concentration necessary to perform skilled work; that the Plaintiff was unable to perform his past relevant work; and that the Plaintiff was a younger individual with a high school education.

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. The VE's testimony, stated above and

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

9

based on a hypothetical that factored in the limitations discussed above, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform.

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity ("RFC"). See Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum in Support" (document #11). Most specifically, the Plaintiff contends that although the ALJ correctly adopted all of his treating physicians' recommendations and opinions concerning his left arm and hand – that is, that the Plaintiff could not use his left arm or hand in any significant work-related manner – the ALJ erred when he determined that the Plaintiff's alleged back pain did not result in disabling functional limitations to his ability to sit and/or stand. However, the undersigned finds that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Relying on evidence in the medical record, Agency medical evaluators found that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited in his legs and right arm; that Plaintiff was limited to no more than occasional

operation of controls with his left arm and hand; and that Plaintiff had a marked limitation in reaching, handling, fingering or feeling with his left arm and hand.

The ALJ found the Plaintiff not disabled, however, based on a residual functional capacity for sedentary and/or light work provided that it did not require use of the left upper extremity for more than a helper for balancing or pushing with no use of the lower left arm or elbow, and did not require sustained concentration necessary to perform skilled work. In other words, the ALJ concluded that the Plaintiff had a lower residual functional capacity than reviewing experts concluded was supported by the objective medical record, including making a significant allowance for the Plaintiff's lower back pain by disallowing skilled concentration, and also fully incorporated both Agency and treating experts' recommendations concerning the Plaintiff's left arm and hand.

The undersigned notes that no physician has opined that the Plaintiff is disabled. As noted above, the ALJ gave great weight to the opinions of the Plaintiff's treating physicians concerning his inability to work with his left arm and/or hand. Nevertheless, the Plaintiff assigns error to the ALJ's treatment of Dr. Patel's opinions, contained in his treatment notes from 2006 as well as the "Multiple Impairment Questionnaire," which Dr. Patel apparently completed in 2006, but was not submitted to the Appeals Council until 2007.[3] The Plaintiff contends that Dr. Patel's findings, if given controlling weight, would require functional restrictions related to the Plaintiff's back pain and alleged inability to sit and/or stand that would have mandated a finding of disabled. The undersigned concludes, however, that the ALJ's decision to give Dr. Patel's findings concerning the Plaintiff's back pain little or no weight was supported by substantial evidence.

---

[3]Although the Appeals Council properly concluded that the "Multiple Impairment Questionnaire" did not constitute grounds for remand, in evaluating the ALJ's treatment of Dr. Patel's opinions, the undersigned has considered those findings, along with Dr. Patel's other records that were submitted timely to the ALJ.

11

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

As the ALJ correctly noted, to the extent that Dr. Patel ever expressed functional limitations related to the Plaintiff's back pain, those limitations were contradicted by Dr. Patel's own clinical findings. In the "Multiple Impairment Questionnaire," Dr. Patel opined that in an eight-hour day Plaintiff could only sit for one or two hours and could only stand for one or two hours. At his most recent examination of the Plaintiff, however, in February 2006, Dr. Patel observed that Plaintiff was in no apparent distress ("NAD") and an examination revealed only "moderately severe" lumbar paraspinal muscle tenderness, "mild to moderate" midline tenderness in the lumbar region, and straight leg raises, deep tendon reflexes, strength, and touch sensation were normal.

The remainder of the medical record supports both the ALJ's treatment of Dr. Patel's opinions and the ALJ's ultimate conclusion that the Plaintiff was not disabled. Other than a brief mention to Dr. Kramer of "some" ongoing back pain, the Plaintiff never complained of or sought treatment for any difficulty with his back. Moreover, although the Plaintiff's treating physicians agreed that he could not work with his left arm and/or hand, his physicians routinely pronounced him

otherwise fit for work.

The Plaintiff also admitted at the hearing that he was taking only moderate amounts of over the counter medications to control his pain. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to

alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's left brachial plexopathy, residual effects of gunshot wounds, and obesity – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Mickles</u>, 29 F.3d at 921, <u>citing</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on a moderate level of daily activities, that is, Plaintiff's ability to help raise three children, to visit with friends, and to travel on vacation, as well as the objective evidence in the medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by

his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #12) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109

F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED.**

Signed: September 22, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge